# EXHIBIT A

# Richland County
# Fifth Judicial Circuit
# Public Index






Switch View

## Frank M Haynie , plaintiff, et al vs Truist Financial Corporation , defendant, et al

| | | | | | |
|---|---|---|---|---|---|
| **Case Number:** | 2026CP4004600 | **Court Agency:** | Richland County Common Pleas | **Filed Date:** | 07/02/2026 |
| **Case Type:** | Common Pleas | **Case Sub Type:** | Breach of Cont 140 | **File Type:** | Jury |
| **Status:** | Pending/ADR | **Assigned Judge:** | Clerk Of Court C P, G S, And Family Court | | |
| **Disposition:** | | **Disposition Date:** | | **Disposition Judge:** | |
| **Original Source Doc:** | | **Original Case #:** | | | |
| **Judgment Number:** | | **Court Roster:** | | | |

**Case Parties** Judgments Tax Map Information Associated Cases **Actions** **Financials**

| Name | Description | Type | Motion Roster | Begin Date | Completion Date | Documents |
|---|---|---|---|---|---|---|
| Haynie, Frank M | ADR/Alternative Dispute Resolution (Clerk Workflow) | Action | | 01/28/2027-11:16 | | |
| Haynie, Frank M | Summons & Complaint | Filing | | 07/02/2026-11:16 | | |

CMSWeb 7.2 © 2026 South Carolina Judicial Branch • All rights reserved

SOUTH CAROLINA
JUDICIAL BRANCH

| | |
|---|---|
| State of South Carolina | In the Court of Common Pleas |
| County of: RICHLAND<br>[Fill in the County Where this Form will be Filed] | 5TH [Fill in the Circuit Where this Form will be Filed] Judicial Circuit |

| | |
|---|---|
| Plaintiff(s): Frank M Haynie<br>and Docwild LLC<br><br>v.<br><br>Defendant(s): Truist Financial Corp<br>And Jane Doe | Case No. 2026CP4004000<br>[Fill in Case Number] |

2026 JUL -2 AM 11:16
JEANETTE W. McBRIDE
C.C.P. G.S. & F.C.
RICHLAND COUNTY
FILED

## Civil Action Coversheet

Submitted By: Frank M Haynie Pro Se
[Fill in Name of Filer]

Address: 1469 Florawood Dr, Columbia, SC 29204
[Fill in Address of Filer]

SC Bar Number: ______________________
[Fill in Filer's South Carolina Bar Number]

Telephone #: (803) 605-9676
[Fill in Filer's Telephone Number]

Fax #: ______________________
[Fill in Filer's Fax Number]

Other: ______________________
[Fill in Filer's Other Contact Information (if applicable)]

Email: Doc@DocWild.com
[Fill in Filer's Email Address]

NOTE: The coversheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing cases that are NOT E-Filed. It must be filled out completely, signed, and dated. A copy of this coversheet must be served on the defendant(s) along with the Summons and Complaint. **This form is NOT required to be filed in E-Filed Cases.**

**Docketing Information (Check all that apply)**

***If Action is Judgment/Settlement do not complete***

- ☒ **Jury Trial** demanded in complaint.
- ☐ **Non-Jury Trial** demanded in complaint.
- ☐ This case is subject to **Arbitration** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
- ☐ This case is subject to **Mediation** pursuant to the Court Annexed Alternative Dispute Resolution Rules.
- ☐ This case is exempt from ADR. (Certificate Attached)

**Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.**

Submitting Party Signature: [signature]
[Submitting Party Signature]

Date: July 1, 2026
[Fill in Date]

**Nature of Action (Check one box below)**

**Contracts**

☐Constructions (100)
☐Debt Collection (110)
☐General (130)
☒Breach of Contract (140)
☒Fraud/Bad Faith (150)
☐Failure to Deliver/Warranty (160)
☐Employment Discrimination (170)
☐Employment (180)
☐Other (199)

**Torts- Professional Malpractice**

☐Dental Malpractice (200)
☐Legal Malpractice (210)
☐Medical Malpractice (220)

☐Notice of Intent Case No. [Fill in Notice of Intent Case Number]

________________

☐Notice File. Med Mal (230)
☐Other (299)

**Torts- Personal Injury**

☐Conversion (310)
☐Motor Vehicle Accident (320)
☐Premises Liability (330)
☐Products Liability (340)
☐Personal Injury (350)
☐Wrongful Death (360)
☐Assault/Battery (370)
☐Slander/Libel (380)
☐Other (399)

**Inmate Petitions**

☐PCR (500)
☐Mandamus (520)
☐Habeas Corpus (530)
☐Other (599)

**Real Property**

☐Claim & Delivery (400)
☐Condemnation (410)
☐Foreclosure (420)
☐Mechanic's Lien (430)
☐Partition (440)
☐Possession (450)
☐Building Code Violation (460)
☐Other (499)

**Judgments/Settlements**

☐Death Settlement (700)
☐Foreign Judgment (710)
☐Magistrate's Judgment (720)
☐Minor Settlement (730)
☐Transcript Judgment (740)
☐Lis Pendens (750)
☐Transfer of Structured Settlement Application Payment Rights (760)
☐Confession of Judgment (770)
☐Petition for Workers Compensation Settlement Approval (780)
☐Incapacitated Adult Settlement (790)
☐Other (799)

**Administrative Law/Relief**

☐Reinstate Driver's License (800)

☐Judicial Review (810)

☐Relief (820)

☐Permanent Injunction (830)

☐Forfeiture- Petition (840)

☐Forfeiture- Consent Order (850)

☐Other (899)

**Special/Complex/Other**

☐Environmental (600)

☐Automobile Arb. (610)

☐Medical (620)

☐Pharmaceuticals (630)

☐Unfair Trade Practices (640)

☐Out of State Depositions (650)

☐Motion to Quash Subpoena in an Out of County Action (660)

☐Pre-Suit Discovery (670)

☐Permanent Restraining Order (680)

☐Interpleader (690)

☐Other (699)

**Appeals**

☐Arbitration (900)

☐Magistrate- Civil (910)

☐Magistrate- Criminal (920)

☐Municipal (930)

☐Probate Court (940)

☐SCDOT (950)

☐Worker's Comp (960)

☐Zoning Board (970)

☐Public Service Comm. (990)

☐Employment Service Comm. (991)

☐Other (999)

**Effective January 1, 2016,** Alternative Dispute Resolution (ADR) is mandatory in all counties, pursuant to Supreme Court Order dated November 12, 2015.

Supreme Court Rules Require the Submission of all Civil Cases to an Alternative Dispute Resolution Process, Unless Otherwise Exempt.

**Pursuant to the ADR Rules, you are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current

roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs.

4. Cases are exempt from ADR under ADR Rule 3(b) upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals;

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. Cases may also be exempt from ADR under ADR Rule 3(c) upon motion to and approval by the court.

6. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

7. Application of a party to be exempt from payment of neutral fees due to indigency should be filed with the Clerk of Court prior to the scheduling of the ADR conference.

**Please Note: You must comply with the Supreme Court Rules regarding ADR. Failure to do so may affect your case or may result in sanctions.**

SOUTH CAROLINA
**JUDICIAL BRANCH**

| | |
|---|---|
| State of South Carolina | In the Court of Common Pleas |
| County of Richland | 5th Judicial Circuit |

| | |
|---|---|
| Complainant:<br>Frank M Haynie<br><u>And</u><br><u>Docwild LLC</u><br><br>vs.<br><br>Respondent(s):<br>Truist Financial Corp; Truist Bank<br>And<br>Jane Doe, individually and as Branch Mgr | Case No. 2026CP400 46000<br><br>COMPLAINT FOR GROSS NEGLIGENC BREACH OF CONTRACT, ETC<br><br>COUNTY FILED 2026 JUL -2 AM 11:16 C.C.P. |

## Summons and Complaint

To **Truist Financial Corp** Respondent Above-Named:

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this complaint upon the Complainant Certified Mail, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Frank M Haynie
1469 Florawood Dr.
Columbia, SC 29204

Signature of Complainant

Dated: [Fill in Date] 7/2/26

**STATE OF SOUTH CAROLINA**

IN THE COURT OF COMMON PLEAS
**FIFTH JUDICIAL CIRCUIT**

**RICHLAND COUNTY**

**Frank M. Haynie** Pro Se

and

**DocWild LLC,**

**2026CP4004600**

**Plaintiffs,**

vs.

**Civil Action No.:** ______________

COUNTY FILED
2025 JUL -2 AM 11:16
[illegible]
C.C.P., G.S. & FC.

**Truist Financial Corporation; Truist Bank;**

and

**Jane Doe, individually and as Branch Manager,**

Truist Bank, Columbia, South Carolina Branch,
whose true name will be substituted upon discovery,

**Defendants.**

## COMPLAINT FOR GROSS NEGLIGENCE, BREACH OF CONTRACT, ETC

*(Jury Trial Demanded)*

### I. PARTIES

1. Plaintiff Frank M. Haynie is an individual resident of Richland County, South Carolina, with a mailing address of 1469 Florawood Drive, Columbia, South Carolina 29204. At all times relevant hereto, Plaintiff Haynie maintained personal and business deposit and credit accounts with Defendants.

2. Plaintiff DocWild LLC is a limited liability company organized under the laws of South Carolina, with its principal place of business in Columbia, South Carolina. At all times relevant hereto, DocWild LLC was engaged in active commercial operations dependent upon the credit facilities and banking relationships at issue in this action.

3. Defendant Truist Financial Corporation is a bank holding company organized under the laws of North Carolina, with its principal place of business at 214 North Tryon Street, Charlotte, North Carolina 28202. Truist Financial Corporation is the parent company of Truist Bank and is subject to the jurisdiction of this Court by virtue of its systematic and continuous business activities in South Carolina.

4. Defendant Truist Bank is a federally chartered bank and wholly-owned subsidiary of Truist Financial Corporation, conducting extensive banking operations throughout South Carolina, including multiple branch locations in Richland County. Truist Bank maintained the deposit accounts, credit lines, and customer records at issue in this action.

5. Defendant Jane Doe was at all relevant times the Branch Manager of the Truist Bank branch in Forest Acres, South Carolina at which Plaintiffs maintained their primary banking relationship. Her true name, title, and

branch assignment will be substituted upon identification through discovery. She is sued individually for her independent acts and omissions and in her official capacity as Branch Manager.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to S.C. Code Ann. § 14-5-340 and § 14-5-350. The amount in controversy exceeds the jurisdictional threshold of this Court.

7. Venue is proper in Richland County pursuant to S.C. Code Ann. § 15-7-30 because Plaintiffs reside in Richland County, the banking accounts at issue were maintained at a Richland County branch, and all material acts and omissions giving rise to this action occurred in Richland County.

## III. FACTUAL ALLEGATIONS

### A. Background

8. Plaintiff Frank M. Haynie is an entrepreneur and commercial developer with approximately sixty (60) years of professional experience in construction, property development, and related commercial activities. Plaintiff DocWild LLC is the entity through which a portion of that commercial activity is conducted.

9. At all times relevant hereto, Plaintiffs maintained multiple accounts with Truist Bank, including personal checking, household checking, and credit line accounts, at a branch located in Forest Acres, South Carolina.

10. Plaintiffs maintained an unblemished financial record across all credit relationships for the entirety of Plaintiff Haynie's professional career. Plaintiffs carried few credit balances and paid all accounts in full on a monthly basis.

11. Among the commercial relationships dependent upon Plaintiffs' banking access was a thirty (30) year commercial credit account with Synovus Bank in connection with Lowe's Companies, Inc., carrying a credit limit of $25,000. That relationship generated approximately two million dollars ($2,000,000) in revenue for Lowe's Companies over its duration and was of sufficient commercial significance to have been maintained at the executive level of Lowe's corporate leadership.

**B. The March 16, 2025 Fraud Event**

12. On or about March 16, 2025 when attempting to pay for groceries with the house debit card plaintiff Haynie discovered the card was blocked because his Truist household checking account had been emptied of approximately $15,000 without his authorization.

13. The cause of the March 16, 2025 account depletion was not immediately known to Plaintiff. Subsequent investigation and the pattern of subsequent fraud events now strongly indicate that this depletion resulted from

unauthorized Zelle transactions originating through a phone number hijacking attack in which a perpetrator exploited a vulnerability in Plaintiff's telecommunications provider to forward Plaintiff's phone number to the perpetrator's own device, thereby bypassing Truist's two-factor authentication.

14. Upon presenting at his Truist branch on or about March 16, 2025, Plaintiff Haynie informed Branch Manager Jane Doe that his account had been emptied and that he was unable to purchase basic necessities, including groceries. Defendant Jane Doe refused to provide any meaningful assistance.

15. March 17, 2025 a Truist branch teller — not branch management — ultimately resolved the immediate crisis by journaling funds from Plaintiff's credit line, a remedial measure necessitated by Defendant Jane Doe's refusal to assist.

**C. The June 2025 Schwab Attack and Issuance of Standing Instruction**

16. In early June 2025, a coordinated attack by the perpetrators resulted in three unauthorized wire transfers for approximately 14,500 from the Plaintiff's Schwab brokerage account to 3 New York Bank of America accounts.

17. The Plaintiff filed a police report with the Forest Acres Police Department to no avail because Truist withheld the information they had regarding the perpetrators. Via the Zelle transaction record, Truist knows the perpetrator's name, address, Bank and account number. Plaintiff also reported the incident to the FBI.

18. Truist subsequently informed Plaintiff that suspicious Zelle transactions had been identified on his account but communicated this information to Plaintiff only after the fact and without proactive intervention to prevent the harm, confirming what the Plaintiff now understands to have been the true cause of the March 16, 2025 account depletion

19. In response to these events, Plaintiff Haynie immediately appeared at his Truist branch and issued an explicit, emphatic standing instruction to branch personnel. The Standing Instruction directed Truist to: (a) permanently flag all of Plaintiff's accounts to prohibit any Zelle transactions of any kind, under any circumstances; and (b) contact Plaintiff directly and personally before processing any ACH transfer out of any of Plaintiff's accounts.

20. In mid June 2025 Truist changed all of the Haynie's bank accounts as well as the business accounts. The Haynie's bought new phones & phone numbers to remediate the telecommunications vulnerability exploited in the March 2025 attack.

21. The Standing Instruction was given clearly, emphatically, and unambiguously. Plaintiff understood and reasonably relied upon Truist's receipt of the Standing Instruction and its obligation to record and enforce it.

## D. The December 2025 Violation and Reiteration of the Standing Instruction

22. On or about December 2025, a Zelle transaction was processed against Plaintiff's Truist account in direct violation of the Standing Instruction.

23. Upon discovering the December 2025 unauthorized Zelle transaction, Plaintiff returned to his Truist branch and reiterated the Standing Instruction explicitly and emphatically. This constituted the second occasion on which Truist personnel received and acknowledged the Standing Instruction.

24. Plaintiff has since been informed by a Truist manager at a separate branch location that Plaintiff's account contains no notation, record, or documentation of the Standing Instruction from June 2025 or the reiteration in December 2025. Both explicit directives were either never entered into Truist's account management systems or were entered and subsequently lost, destroyed, or disregarded.

## E. The April 23, 2026 Email-Hijack Attack

25. On or about April 23, 2026, two third-party perpetrators hijacked Plaintiff's email address and used it to originate Zelle transactions against Plaintiff's Truist business account. This attack vector — email hijacking — was distinct from the phone number hijacking methodology used in the March 2025 attack.

26. Through the April 23, 2026 attack, the perpetrator executed eight (8) separate unauthorized Zelle transactions, collectively totaling $4,929.00, against Plaintiff's accounts.

27. Each of the eight (8) unauthorized Zelle transactions on April 23, 2026 was processed by Truist in direct violation of the Standing Instruction, which had been given twice and which Truist had a contractual and statutory obligation to record and enforce.

28. Plaintiff discovered the April 23, 2026 unauthorized transactions and complained vociferously to Truist, filing a formal dispute. Truist's investigation of the April 23, 2026 transactions proceeded at an unreasonably slow pace and remained unresolved at the time of the subsequent attack described below.

29. Truist blocked all access to Plaintiff's business account, rendering the Plaintiff blind to the activity in the account.

30. Plaintiff filed a second police report with the Forest Acres Police Dept & the FBI.

**<u>F. The May 17, 2026 Email-Hijack Attack and Account Overdraft</u>**

31. On or about May 17, 2026, while Plaintiff's April 23, 2026 dispute remained open and unresolved, three perpetrators executed a second email-hijack attack against Plaintiff's Truist accounts.

32. Through the May 17, 2026 attack, the perpetrator executed six (6) separate unauthorized Zelle transactions, collectively totaling $7,479.00, which overdrew Plaintiff's account entirely.

33. Each of the six (6) unauthorized Zelle transactions on May 17, 2026 was processed by Truist in direct violation of the Standing Instruction.

34. As with the prior incidents, Truist did not notify the Plaintiff of the "suspicious" transactions or the fact that the account was overdrawn.

35. Truist's response to the May 17, 2026 attack was even slower than its response to the April 23, 2026 attack, further compounding Plaintiff's damages.

36. Truist has confirmed that it possesses the full identifying information of the perpetrators responsible for the unauthorized Zelle transactions, including their names, addresses, and linked bank account details, derived from the Zelle transaction records. Despite possessing this information, Truist has declined to release it to law enforcement, citing unspecified institutional policy grounds.

## G. The Eight-Day Repatriation Window and Consequential Damages

37. During Truist's investigation following the May 17, 2026 attack, Plaintiff's accounts remained drained. Legitimate, authorized ACH and auto-pay transactions that Plaintiff had funded — transactions entirely unrelated to the

fraud — were returned for insufficient funds solely because Truist's failure to prevent the unauthorized Zelle activity had left the accounts empty.

38. Truist did not notify the Plaintiff of the returned transactions. The Plaintiff filed a third Police report with Forest Acres Police Dept. The Plaintiff didn't find any evidence that Truist had done anything to apprehend or hobble the perpetrators illicit activities.

39. Truist ultimately repatriated the stolen funds after approximately eight (8) days. The repatriation of the stolen funds, however, did not remediate the catastrophic consequential damages caused during the repatriation window.

40. As a direct and proximate result of the returned transactions caused by Truist's fraud failures, Synovus Bank permanently closed Plaintiff's Lowe's Companies commercial credit account, citing the returned transactions as the basis for closure. Synovus Bank did not contact Plaintiff before closing the account and did not investigate the cause of the returned transactions.

41. The Lowe's/Synovus account represented a thirty (30) year commercial relationship with a $25,000 credit limit, maintained without a single adverse event for its entire duration. The relationship generated approximately $2,000,000 in revenue for Lowe's Companies and was maintained at the executive level of Lowe's corporate leadership. Synovus Bank has confirmed the account is permanently closed and cannot be reopened.

42. The permanent loss of the Lowe's/Synovus commercial credit facility, combined with the adverse reporting to ChexSystems and Early Warning Services caused by the Truist-generated returned transactions, has materially disrupted Plaintiff's commercial operations and contributed to the disruption of a sixty (60) year professional career.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION — Negligence (Against Truist Financial Corporation and Truist Bank)

43. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

44. Defendants Truist Financial Corporation and Truist Bank owed Plaintiffs a duty of reasonable care in the maintenance, protection, and administration of Plaintiffs' accounts, including a duty to accurately record and enforce explicit customer fraud-prevention instructions.

45. Defendants breached that duty by: (a) failing to record Plaintiffs' Standing Instruction in June 2025; (b) failing to record Plaintiffs' reiteration of the Standing Instruction in December 2025; (c) processing unauthorized Zelle transactions in December 2025, April 2026, and May 2026 in direct violation of the Standing Instruction; (d) failing to conduct a timely investigation of the April 2026 dispute; and (e) failing to prevent the May 2026 attack while the April 2026 dispute remained unresolved.

46. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered actual damages including unauthorized transaction losses of $4,929.00 (April 2026) and $7,479.00 (May 2026), plus the amount of the March 2025 depletion to be proven at trial, consequential damages from the permanent closure of the Lowe's/Synovus commercial credit account, adverse credit reporting damages, and ongoing business disruption damages, all in an amount to be proven at trial.

**SECOND CAUSE OF ACTION — Gross Negligence (Against Truist Financial Corporation and Truist Bank)**

47. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

48. Defendants' conduct in processing unauthorized Zelle transactions after receiving the Standing Instruction on two separate occasions, in failing to record either directive, and in failing to resolve an open fraud dispute before a second attack occurred on the same accounts, constitutes gross negligence — a reckless disregard for Plaintiffs' rights and safety of a character that warrants the imposition of punitive damages under South Carolina law.

49. Defendants' institutional financial interest in Zelle transaction volume — Truist being a co-owner of Early Warning Services, the operator of the Zelle network — creates a conflict of interest that may have contributed to the institutional failure to honor Plaintiffs' explicit Zelle prohibition, a circumstance that further supports the finding of gross negligence or willful misconduct.

50. As a result of Defendants' gross negligence, Plaintiffs are entitled to actual damages as set forth herein, plus punitive damages in an amount sufficient to punish Defendants for their conduct and deter similar conduct in the future.

**THIRD CAUSE OF ACTION — Violation of the Electronic Fund Transfer Act (Against Truist Financial Corporation and Truist Bank)**

51. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

52. The unauthorized Zelle transactions at issue constitute unauthorized electronic fund transfers within the meaning of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. Part 1005.

53. Defendants violated EFTA and Regulation E by: (a) failing to limit Plaintiffs' liability for unauthorized electronic fund transfers following timely notice, in violation of 15 U.S.C. § 1693g and 12 C.F.R. § 1005.6; (b) failing to conduct an adequate and timely investigation of Plaintiffs' error notices, in violation of 12 C.F.R. § 1005.11; and (c) failing to provisionally credit Plaintiffs' account within the timeframes required by Regulation E during the investigation period.

54. The April 23, 2026 attack involved eight (8) separate unauthorized electronic fund transfers. The May 17, 2026 attack involved six (6) separate

unauthorized electronic fund transfers. Each unauthorized transfer may constitute a separate violation for purposes of statutory damages.

55. Pursuant to 15 U.S.C. § 1693m, Plaintiffs are entitled to: (a) actual damages caused by Defendants' EFTA violations; (b) statutory damages of not less than $100 nor more than $1,000 per action; and (c) costs of the action, including reasonable attorney's fees.

**FOURTH CAUSE OF ACTION — Breach of Contract (Against Truist Financial Corporation and Truist Bank)**

56. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

57. The deposit account agreement and related banking agreements between Plaintiffs and Defendants constitute valid and binding contracts supported by adequate consideration.

58. Plaintiffs' Standing Instruction, given to Defendants on two separate occasions, constituted a valid modification or supplementation of the parties' contractual relationship that Defendants were obligated to honor.

59. Defendants materially breached the parties' contractual relationship by: (a) failing to record and enforce the Standing Instruction; (b) processing unauthorized transactions in violation of the Standing Instruction; and (c) failing to investigate and resolve Plaintiffs' dispute in accordance with the

contractual obligations and applicable regulatory requirements governing the parties' relationship.

60. As a direct and proximate result of Defendants' breach, Plaintiffs suffered damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION — Negligence Per Se (Against Truist Financial Corporation and Truist Bank)**

61. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

62. EFTA and Regulation E establish specific standards of conduct for financial institutions with respect to the handling of unauthorized electronic fund transfers and consumer disputes. Plaintiffs are within the class of persons these statutes were designed to protect, and the harms suffered by Plaintiffs are of the type these statutes were designed to prevent.

63. Defendants' violations of EFTA and Regulation E as alleged herein constitute negligence per se under South Carolina law.

64. As a direct and proximate result of Defendants' statutory violations, Plaintiffs suffered damages in an amount to be proven at trial.

**<u>SIXTH CAUSE OF ACTION — Negligent Supervision (Against Truist Financial Corporation and Truist Bank)</u>**

65. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

66. Defendants had a duty to adequately supervise, train, and direct their employees, including branch managers and tellers, with respect to the recording and enforcement of customer fraud-prevention instructions.

67. Defendant Jane Doe's repeated failures to assist Plaintiffs during active fraud events, her failure to record or transmit Plaintiffs' Standing Instruction, and her refusal to provide exculpatory documentation following the Synovus account closure reflect a failure of training, supervision, and institutional oversight for which Defendant Truist Financial Corporation and Truist Bank are liable.

68. As a direct and proximate result of Defendants' negligent supervision, Plaintiffs suffered damages in an amount to be proven at trial.

**<u>SEVENTH CAUSE OF ACTION — Individual Liability (Against Defendant Jane Doe)</u>**

69. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

70. Defendant Jane Doe, in her individual capacity, owed Plaintiffs a duty of reasonable care in her capacity as Branch Manager with supervisory authority over Plaintiff's accounts.

71. Defendant Jane Doe independently breached that duty by: (a) refusing to assist Plaintiff during the March 2025 active fraud event despite being informed Plaintiff could not purchase groceries; (b) failing to record or transmit Plaintiff's Standing Instruction on two occasions; and (c) refusing to provide a written statement acknowledging that the returned transactions resulted from Truist's fraud failures, thereby preventing Plaintiff from seeking reinstatement of the Synovus account.

**72.** As a direct and proximate result of Defendant Jane Doe's independent negligence, Plaintiffs suffered damages in an amount to be proven at trial.

## V. DAMAGES

73. As a direct and proximate result of Defendants' conduct as alleged herein, Plaintiffs have suffered and continue to suffer the following damages:

**a**. Unauthorized transaction losses of $4,929.00 (April 23, 2026, 8 transactions) and $7,479.00 (May 17, 2026, 6 transactions), plus the March 16, 2025 depletion of approximately $15,000, totaling no less than $27,408.00 in direct losses, with additional amounts subject to proof at trial;

**b**. Permanent loss of a thirty-year, $25,000 commercial credit facility representing approximately $2,000,000 in historical commercial value, in an amount to be proven at trial;

**c**. Consequential business damages, including disruption of a sixty-year professional career dependent upon commercial credit access, in an amount to be proven at trial;

**d**. Adverse credit reporting damages resulting from ChexSystems and Early Warning Services reporting of returned transactions caused by Defendants' fraud failures, in an amount to be proven at trial;

**e**. Statutory damages under EFTA of not less than $100 nor more than $1,000 per violation, with the April 2026 and May 2026 attacks involving fourteen (14) separate unauthorized transactions each potentially constituting a separate violation;

**f**. Punitive damages for gross negligence and reckless disregard of Plaintiffs' rights in an amount sufficient to punish Defendants and deter similar conduct;

**g**. Costs of this action, including attorney's fees as provided by EFTA; and

**h**. Such other and further relief as this Court deems just and proper.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Frank M. Haynie and DocWild LLC respectfully pray for judgment against Defendants Truist Financial Corporation, Truist Bank, and Jane Doe, jointly and severally, as follows:

74. Actual damages in an amount to be proven at trial, but believed to exceed $2,000,000 when consequential damages are included;

75. Statutory damages pursuant to 15 U.S.C. § 1693m;

76. Punitive damages in an amount sufficient to punish Defendants for gross negligence and deter similar conduct;

77. An order directing Defendants to correct all adverse ChexSystems and Early Warning Services reporting attributable to returned transactions caused by Defendants' fraud failures;

78. An order directing Defendants to provide Plaintiffs with a written statement suitable for submission to Synovus Bank and Lowe's Companies confirming that returned transactions resulted from unauthorized Zelle activity and not customer conduct;

79. Costs of this action and reasonable attorney's fees as provided by statute;

80. Pre- and post-judgment interest as allowed by law; and

81. Such other and further relief as this Court deems just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Frank M. Haynie, Pro Se
DocWild LLC, by Frank M. Haynie, Managing Member, Pro Se
1469 Florawood Drive, Columbia, South Carolina 29204
Telephone: (803) 605-9767

June 25, 2026

# Richland County Common Pleas

**Clerk : Jeanette W. McBride**
**Richland County Judicial Center**
**Columbia, SC 29201**
**(803) 576-1999**

**DUPLICATE**

| | |
|---|---|
| Received From: | Haynie, Frank M |
| Paying for: | Self |
| Transaction Type: | Payment |
| Payment Type: | Cash $150.00 |
| Total Paid: | $150.00 |

Date: 7/ 2/2026
Receipt #: 387799
Clerk: c40bmetts

Reference #:
Comment:

**Non-Refundable**

| Case # | Caption | Previous Balance | Amount Paid | Balance Due | S/T |
|---|---|---|---|---|---|
| 2026CP4004600 | Frank M Haynie vs Truist Financial Corporation | **$150.00** | **$150.00** | **$0.00** | **140** |
| **Total Cases:** | **1** | **$150.00** | **$150.00** | **$0.00** | |