UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Frank M. Haynie and DocWild LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Truist Bank, Truist Financial Corporation, Demetria Scott, and Early Warning Services, LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 3:26-CV-03590-RMG-TER |

**MEMORANDUM IN SUPPORT OF DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS


**Page**

I. INTRODUCTION ... 1

II. STATEMENT OF FACTS ... 2

A. Allegations in Plaintiffs' FAC. ... 2

B. Truist Online and Mobile Banking Service Agreement's Zelle® Network Service Provisions. ... 4

III. LEGAL STANDARD ... 5

IV. ARGUMENT ... 6

A. Plaintiffs Fail to State a SCUTPA Claim Against EWS. ... 6

B. Plaintiffs Fail to State a Negligence Claim Against EWS. ... 8

1. EWS Did Not Owe Plaintiffs a Duty of Care. ... 9

2. Plaintiffs Fail to Adequately Plead Breach or Causation ... 12

V. CONCLUSION ... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5, 8, 9, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5, 8, 9, 13

*Bibicheff v. PayPal, Inc.*,
No. 2:17-cv-4679 (DRH)(AYS), 2020 WL 2113373 (E.D.N.Y. May 4, 2020),
*aff'd,* 844 F. App'x 394 (2d Cir. 2021) ....................11

*Big Red Box, LLC v. Square, Inc.*,
No. 3:18-cv-758-SAL-SVH, 2020 WL 465928 (D.S.C. Jan. 22, 2020) ....................10, 11

*Braziel v. NOVO Dev. Corp.*,
399 F.Supp.3d 487 (D.S.C. 2019) ....................8

*Century Aluminum of S.C., Inc. v. S.C. Pub. Serv. Auth.*,
278 F. Supp. 3d 877 (D.S.C. 2017) ....................6

*Clement v. Spartanburg Steel Prods.*,
No. 7:19-cv-666-MGL-KFM, 2020 WL 8713676 (D.S.C. Aug. 12, 2020) ....................4

*Ethox Chem., LLC v. Coca-Cola Co.*,
No. 6:12-cv-01682-TMC, 2013 WL 41001 (D.S.C. Jan. 3, 2013) ....................7

*Gilbert v. Wells Fargo Bank, N.A.*,
698 F. Supp. 3d 844 (D.S.C. 2023) ....................7

*Glenn v. Wells Fargo Bank, N.A.*,
710 F. App'x 574 (4th Cir. 2017) ....................4, 5

*Int'l Ass'n of Machinists & Aerospace Workers v. Haley*,
832 F. Supp. 2d 612 (D.S.C. 2011) ....................4

*M.P. by & through Pinckney v. Meta Platforms, Inc.*,
127 F.4th 516 (4th Cir. 2025) ....................12

*Oakwood Prods., Inc. v. SWK Techs., Inc.*,
774 F. Supp. 3d 734 (D.S.C. 2025) ....................6

*RLFShop, LLC v. Am. Express Co.*,
No. 3:17-cv-405, 2018 WL 4030544 (S.D. Ohio Aug. 23, 2018) ....................11

*Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*,
711 F. Supp. 3d 593 (D.S.C. 2024) ... 7

*Wickersham v. Ford Motor Co.*,
997 F.3d 526 (4th Cir. 2021) ... 12

*Williams v. Preiss-Wal Pat III, LLC*,
17 F. Supp. 3d 528 (D.S.C. 2014) ... 9, 10

**Rules**

Fed. R. Civ. P. 12(b)(6) ... 1, 4, 5

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendant Early Warning Services, LLC ("EWS"), respectfully submits this Memorandum of Law in support of its Motion to Dismiss all claims asserted against it in the First Amended Complaint ("FAC"), *see* Dkt. No. 25, by the Plaintiffs, Frank M. Haynie ("Haynie") and DocWild LLC (together, "Plaintiffs").[1]

## I. INTRODUCTION

This case arises from allegedly unauthorized Zelle transactions affecting Plaintiffs' Truist Bank ("Truist") accounts. Plaintiffs allege that Truist failed to implement their instruction prohibiting Zelle transactions, failed to prevent unauthorized transfers, and failed to adequately respond to reports of fraud. Dkt. No. 25, ¶¶ 18-24, 30-32, 52-54. Plaintiffs further allege that EWS, as the operator of Zelle, inadequately designed and operated the network's fraud-detection and dispute-resolution systems and that those alleged deficiencies contributed to Plaintiffs' losses. Dkt. No. 25, ¶¶ 14, 45-46, 85-87. Based on those allegations, Plaintiffs assert claims against Truist Bank, Truist Financial Corporation, and Demetria Scott for negligence, gross negligence, violation of the Electronic Fund Transfer Act, breach of contract, negligence per se, and negligent supervision, and assert claims against EWS under the South Carolina Unfair Trade Practices Act ("SCUTPA") and for negligence. As amply demonstrated herein, Plaintiffs' claims against EWS fail as a matter of law and should be dismissed.

*First*, Plaintiffs' SCUTPA claim fails because the FAC does not identify any specific unfair or deceptive act by EWS, does not plausibly allege an adverse impact on the public interest, and does not plausibly allege that any conduct by EWS caused Plaintiffs' losses.

[1] On October 27, 2026, Plaintiff Haynie filed a motion to drop Plaintiff DocWild LLC from this action. Dkt. No. 45. That motion remains pending, and as of the filing of this Motion, DocWild LLC remains a plaintiff in this case.

*Second*, Plaintiffs' negligence claim likewise fails because EWS owed no cognizable duty of care to Plaintiffs, with whom it had no contractual, customer, or other special relationship. Even if a duty existed, which EWS expressly denies, the FAC still fails to plausibly allege either breach or causation because Plaintiffs identify no specific conduct by EWS that violated a standard of care and plead only conclusory assertions that EWS's operation of Zelle caused their losses.

Accordingly, because the FAC fails to plausibly allege any claim against EWS, the claims against EWS should be dismissed with prejudice.

## II. STATEMENT OF FACTS

### A. Allegations in Plaintiffs' FAC.

According to the FAC, Plaintiffs allege that, in June 2025, Haynie instructed Truist that no Zelle transactions were to be permitted on any accounts held by Plaintiffs. Dkt. No. 25, ¶¶ 18–19. Plaintiffs contend that Truist failed to record or implement that instruction and that Plaintiffs' accounts were subsequently subjected to unauthorized Zelle transfers over approximately fourteen months through multiple alleged "attack vectors," including phone and email hijacking. Dkt. No. 25, ¶¶ 20–22. Plaintiffs further allege that Truist failed to adequately respond to reports of the alleged fraud and, during a fraud investigation, froze Plaintiffs' account, resulting in the loss of a commercial line of credit and other damages. Dkt. No. 25, ¶¶ 3–6. Plaintiffs also reference a 2024 data-security incident disclosed by Truist and allege that their customer information maintained by Truist was compromised. Dkt. No. 25, ¶ 8.

As to Defendant EWS, Plaintiffs allege that EWS operates Zelle, is jointly owned by Truist and six other financial institutions, and "designs, controls, and profits from the Zelle transaction infrastructure," including its fraud-detection and dispute-handling processes. Dkt. No. 25, ¶ 14. Plaintiffs contend that EWS failed to implement adequate safeguards, fraud detection measures,

verification procedures, and dispute-resolution protocols despite alleged knowledge of a broader pattern of fraud occurring on Zelle. Dkt. No. 25, ¶¶ 7, 14, 85–86.

Plaintiffs further allege that EWS's operation of Zelle, including its design, fraud-detection protocols, and dispute-handling practices, constitutes an unfair or deceptive trade practice and that those practices caused Plaintiffs damages. Dkt. No. 25, ¶¶ 80–82. Plaintiffs also allege that EWS has been accused of similar conduct in separate litigation brought by the New York Attorney General and contend that the existence of that litigation demonstrates that EWS's alleged conduct affects the public interest. Dkt. No. 25, ¶ 81. Plaintiffs allege that EWS's design and operation of Zelle, including its "handling of fraud reports, its dispute-resolution protocols, and its sharing of information among member banks," was a "root cause of the fraud" Plaintiffs suffered and proximately caused their resulting damages. Dkt. No. 25, ¶¶ 46, 87.

Based on these allegations, Plaintiffs assert claims against Truist Bank, Truist Financial Corporation, and Demetria Scott for negligence, gross negligence, violation of the Electronic Fund Transfer Act, breach of contract, negligence per se, and negligent supervision. *See generally* Dkt. No. 25. Plaintiffs also assert a claim under the South Carolina Unfair Trade Practices Act ("SCUTPA") and a negligence claim against EWS based on its alleged operation of Zelle and purported failure to prevent or remediate unauthorized transfers. Dkt. No. 25, ¶¶ 79–87. Plaintiffs seek actual, consequential, treble, punitive, and statutory damages, as well as attorneys' fees, costs, interest, and other relief. *See* Dkt. No. 25 at Prayer for Relief.

Plaintiffs originally filed this action in the Court of Common Pleas for Richland County, South Carolina, and Truist properly removed the action to this Court on August 20, 2026. Plaintiffs filed the FAC on September 28, 2026, adding EWS as a defendant. EWS now respectfully moves to dismiss all claims asserted against it in the FAC.

### B. Truist Online and Mobile Banking Service Agreement's Zelle® Network Service Provisions.

Zelle is a service operated by EWS and made available to customers through participating financial institutions, including Truist. As the Truist Online and Mobile Banking Service Agreement explains, Truist has "partnered with the Zelle® Network ('Zelle')" to enable customers to transfer money to other users through participating financial institutions. *See* Ex. 1 (Truist Online and Mobile Banking Service Agreement) ("Truist Agreement"), at § 8(a)(i)).[2]

Enrollment in and use of the Zelle service are governed by the contractual agreement between the customer and Truist, not by any separate agreement between the customer and EWS. *See generally* Truist Agreement § 8. The Truist Agreement makes clear that "Zelle provides no deposit account or other financial services," "Zelle neither transfers nor moves money," and "[a]ll money will be transferred by a Network Financial Institution." *Id.* § 8(a)(ii). The Truist Agreement further explains that "Network Financial Institutions" are the financial institutions that have partnered with Zelle and that money will be transferred by those institutions. *Id.* § 8(a). Thus, the customer's banking relationship remains with the participating Network Financial Institution, not EWS. *Id.*

---

[2] Attached as Exhibit 1 is a true and correct copy of the Truist Online and Mobile Banking Service Agreement ("Truist Agreement"), which is publicly available on Truist's website. A court ruling on a Rule 12(b)(6) motion may consider documents attached to the motion to dismiss that are integral to and explicitly relied upon in the complaint, even if those documents are not attached to the complaint. *See Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 576 (4th Cir. 2017); *Clement v. Spartanburg Steel Prods.*, No. 7:19-cv-666-MGL-KFM, 2020 WL 8713676, at *4 (D.S.C. Aug. 12, 2020), *report and recommendation adopted sub nom. Clement v. Spartanburg Steel Prods., Inc.*, No. 7:19-cv-666-MGL-KFM, 2021 WL 809428 (D.S.C. Mar. 2, 2021), *aff'd,* No. 21-1344, 2021 WL 5563964 (4th Cir. Nov. 29, 2021); *Int'l Ass'n of Machinists & Aerospace Workers v. Haley*, 832 F. Supp. 2d 612, 622 (D.S.C. 2011). Here, the Court may consider the Truist Agreement in resolving this Motion because Plaintiffs' claims arise from and are predicated on the use of the Zelle service, which is governed by that Agreement. *See, e.g.*, Dkt. No. 25 ¶¶ 14, 44-46, 80-86. The Agreement is therefore integral to the FAC.

The Truist Agreement likewise confirms that Truist, not EWS, is responsible for investigating transaction errors and unauthorized-transfer claims. Customers are directed to contact Truist regarding alleged errors or unauthorized transfers, and Truist is responsible for conducting any resulting investigation. *Id.* §§ 8(m), 8(n). The Agreement contains no provision imposing any duty on EWS to investigate customer disputes or reimburse customer losses.

Moreover, the Truist Agreement's liability provisions further underscore EWS's limited role. The Agreement provides that neither Truist nor Zelle is liable for certain losses arising from transfers made through the service. *Id.* §§ 8(i), 8(j), 8(n). The Agreement also limits the liability of Zelle, EWS, and participating financial institutions for claims arising from use of the Zelle service. *Id.* § 8(t). Nothing in the Agreement creates a direct contractual relationship between EWS and Truist customers or imposes independent obligations on EWS toward those customers. *Id.* §§ 8, 8(w).

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Courts need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, [legal conclusions, and] conclusory statements." *Id.* In addition, in evaluating a Rule 12(b)(6) motion, the court may consider "(1) documents . . . explicitly incorporated into the complaint by reference, (2) those attached to the complaint as exhibits, and (3) undisputedly authentic document[s] submitted by the movant that . . . [are] integral to the complaint." *Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 576 (4th Cir. 2017) (internal quotations omitted).

## IV. ARGUMENT

### A. Plaintiffs Fail to State a SCUTPA Claim Against EWS.

Plaintiffs' SCUTPA claim is based on the theory that EWS operates the Zelle network, allegedly employs inadequate fraud-detection and dispute-resolution practices, and has been accused of similar conduct in separate litigation brought by the New York Attorney General. Dkt. No. 25, ¶¶ 45-46, 80-82. Plaintiffs further allege, in conclusory fashion, that EWS's operation of Zelle, including its design, fraud-detection protocols, and dispute-handling practices, constitutes an unfair or deceptive act or practice in the conduct of trade or commerce, that this conduct affects the public interest, and that it proximately caused Plaintiffs' damages. Dkt. No. 25, ¶¶ 80-82. Plaintiffs fail to plausibly plead any of SCUTPA's required elements. First, the FAC does not identify any specific unfair or deceptive act by EWS. Second, Plaintiffs fail to plausibly allege an adverse impact on the public interest because they rely solely on the existence of other litigation involving EWS. Third, Plaintiffs fail to plead facts showing that any conduct by EWS proximately caused their alleged losses.

To prevail on a SCUTPA claim, a plaintiff must establish: "(1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Century Aluminum of S.C., Inc. v. S.C. Pub. Serv. Auth.*, 278 F. Supp. 3d 877, 890 (D.S.C. 2017). An act is "unfair" when it is offensive to public policy or when it is immoral, unethical, or oppressive. *Id.*; *Oakwood Prods., Inc. v. SWK Techs., Inc.*, 774 F. Supp. 3d 734, 745 (D.S.C. 2025). Here, Plaintiffs fail to plead the elements of a SCUTPA claim.

*First*, Plaintiffs fail to identify any specific unfair or deceptive act by EWS. Rather than challenge a particular representation, omission, policy, or practice, Plaintiffs broadly allege that EWS's "operation" of Zelle, including its "design, fraud-detection protocols, and dispute-handling

practices," was unfair or deceptive. Dkt. No. 25, ¶ 80. Such generalized descriptions of EWS's business operations do not identify a specific unfair or deceptive act or practice and, therefore, cannot support a SCUTPA claim. Nor do Plaintiffs explain how any aspect of EWS's alleged conduct was unfair, deceptive, immoral, unethical, oppressive, or contrary to public policy. Instead, the FAC offers only labels and conclusions concerning EWS's operation of the Zelle network. Absent factual allegations identifying the particular conduct being challenged and explaining why that conduct was allegedly unfair or deceptive, Plaintiffs have failed to plausibly plead SCUTPA's first element.

*Second*, even assuming Plaintiffs adequately allege an unfair or deceptive practice (they do not), Plaintiffs fail to plausibly allege that the practice affected the public interest. Under South Carolina law, "unfair or deceptive acts have an adverse impact upon the [public] if those acts have the potential for repetition." *Gilbert v. Wells Fargo Bank, N.A.*, 698 F. Supp. 3d 844, 851 (D.S.C. 2023). Conduct, however, "that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim." *Id.*

Here, to establish the requisite potential for repetition, Plaintiffs point only to the existence of another lawsuit involving EWS. Dkt. No. 25, ¶ 81. However, courts in the District of South Carolina have concluded that allegations concerning other lawsuits are insufficient to plausibly allege the potential for repetition necessary to establish an adverse impact on the public. *See, e.g.*, *Gilbert*, 698 F. Supp. 3d at 851 ("a claim against a party is not probative of wrongdoing"); *Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*, 711 F. Supp. 3d 593, 600 (D.S.C. 2024) (dismissing SCUTPA claim for failure to adequately plead an adverse impact on the public interest where plaintiff relied on allegations that defendants had been sued elsewhere for similar conduct); *Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-cv-01682-TMC, 2013 WL 41001, at *3 (D.S.C.

Jan. 3, 2013) ("Even if Coca-Cola has been accused of similar past violations, which the court is not assuming without additional factual allegations, allegations of accusations are not the same as allegations of specific similar past acts."). Plaintiffs' reliance on the existence of another lawsuit therefore fails to plausibly allege an adverse impact on the public interest.

*Finally*, Plaintiffs fail to plausibly allege that any purported unfair or deceptive act by EWS caused their losses. The FAC does not identify any representation on which Plaintiffs relied, any omission that altered their conduct, or any specific EWS practice that caused the challenged transactions to occur. Instead, Plaintiffs merely assert that EWS's "unfair and deceptive practices proximately caused Plaintiffs' damages." Dkt. No. 25, ¶ 82. Such a formulaic recitation of SCUTPA's causation element is insufficient under *Twombly* and *Iqbal*. Without factual allegations connecting a specific unfair or deceptive act by EWS to Plaintiffs' alleged losses, Plaintiffs cannot satisfy the third element of a SCUTPA claim.

Accordingly, because Plaintiffs fail to plausibly allege a specific unfair or deceptive act, fail to plausibly allege an adverse impact on the public interest, and fail to plausibly allege causation, Plaintiffs' SCUTPA claim against EWS must be dismissed.

### B. Plaintiffs Fail to State a Negligence Claim Against EWS.

Plaintiffs assert a negligence claim against EWS for "failing to implement or maintain adequate fraud-detection, verification, or dispute-resolution protocols on the Zelle network." Dkt. No. 25, ¶ 86. Plaintiffs' allegations are inconsistent with the terms of their agreement with Truist and fail to support a claim against EWS as a matter of law.

To bring a successful negligence claim under South Carolina law, a plaintiff must demonstrate that "(1) [the] defendant owes a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual or proximate cause of the plaintiff's injury; and (4) [the] plaintiff suffered an injury or damages."

*Braziel v. NOVO Dev. Corp.*, 399 F.Supp.3d 487, 490 (D.S.C. 2019). As detailed below, Plaintiffs' negligence claim against EWS fails for two reasons. *First*, Plaintiffs do not (and cannot) allege any facts establishing that EWS owed Plaintiffs a duty of care. *Second*, even if EWS owed a duty of care (which it does not), Plaintiffs do not and cannot plausibly allege any breach by EWS or that any conduct of EWS caused Plaintiffs any harm.

**1. EWS Did Not Owe Plaintiffs a Duty of Care.**

Plaintiffs' negligence claim fails at the threshold element of duty. In their FAC, Plaintiffs allege that EWS "operates the Zelle Network for its owner-banks, including Truist" and owes a duty of reasonable care to Plaintiffs, as "foreseeable user[s] of the Zelle Network EWS designs and operates, to implement reasonable safeguards against unauthorized and fraudulent transfers." Dkt. No. 25, ¶¶ 44, 85. But Plaintiffs' theory rests entirely on the premise that EWS owed them an independent legal duty to prevent fraudulent transactions. The FAC, however, alleges no relationship between Plaintiffs and EWS that could give rise to such a duty. EWS is not alleged to hold Plaintiffs' accounts, transfer Plaintiffs' funds, or have entered into any agreement with Plaintiffs. Aside from alleging in conclusory fashion that EWS operates the Zelle network and that Plaintiffs were foreseeable users of that network, the FAC identifies no statute, contract, special relationship, voluntary undertaking, or other legally recognized source from which such a duty could arise. Such conclusory allegations are insufficient to state a claim against EWS as a matter of law. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Under South Carolina law, the existence of a duty turns primarily on the relationship between the parties, not the foreseeability of harm. *Williams v. Preiss-Wal Pat III, LLC*, 17 F. Supp. 3d 528, 535-36 (D.S.C. 2014). A legal duty arises only where recognized by statute, contract, relationship, status, property interest, or some other special circumstance. *Id.* The South Carolina Supreme Court has recognized only limited exceptions to that principle: "1) where the defendant

has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant." *Big Red Box, LLC v. Square, Inc.*, No. 3:18-cv-758-SAL-SVH, 2020 WL 465928, at *12 (D.S.C. Jan. 22, 2020), *report and recommendation approved in part sub nom. Big Red Box, LLC v. Tye Grisel*, No. 3:18-cv-00758-JMC, 2020 WL 5545283 (D.S.C. Sept. 16, 2020).

No such duty exists here. Plaintiffs' theory appears to be that EWS owed them a duty merely because they were foreseeable users of the Zelle Network. Dkt. No. 25, ¶ 85. But South Carolina law expressly rejects foreseeability alone as the basis for a legal duty. *Williams*, 17 F. Supp. 3d at 535-36. Plaintiffs do not allege any contractual, customer, or other direct relationship with EWS. To the contrary, Plaintiffs' own agreement with Truist confirms EWS's limited role. Specifically, the Truist Agreement makes clear that customers access Zelle through participating financial institutions, that "Zelle provides no deposit account or other financial services," that "Zelle neither transfers nor moves money," and that "[a]ll money will be transferred by a Network Financial Institution." Truist Agreement § 8(a)(ii). The Truist Agreement further explains that customers' use of the service is governed through their relationship with Truist and other participating financial institutions, not through any direct banking or customer relationship with EWS. *See id.* § 8(a). Thus, EWS neither holds customer funds nor effectuates transfers between financial institutions.

The District of South Carolina's decision in *Big Red Box, LLC* is instructive. There, fraudsters used stolen credit-card information to purchase products through Square's payment-processing platform, and the plaintiff alleged that Square negligently processed the fraudulent transactions and failed to implement adequate safeguards to prevent the resulting losses. *Big Red*

*Box, LLC*, 2020 WL 465928 at *11-12. The court rejected the negligence claim, finding that the relationship between a payment processor and a non-customer victim of fraud was too attenuated to give rise to a duty of care. *Id.* at *12. The same is true here. Plaintiffs do not allege any contractual, customer, or other direct relationship with EWS. Instead, they seek to impose a duty based solely on EWS's alleged operation of Zelle and Plaintiffs' status as foreseeable users of that network. South Carolina law does not recognize such a duty.

Nor does any exception to the duty requirement apply. Courts analyzing analogous payment-processing relationships have consistently held that facilitating financial transactions does not create a special relationship or otherwise give rise to a duty of care. *See, e.g.*, *Big Red Box, LLC*, 2020 WL 465928 at *12 (no duty arising from processing fraudulent credit card transactions); *RLFShop, LLC v. Am. Express Co.*, No. 3:17-cv-405, 2018 WL 4030544, at *6 (S.D. Ohio Aug. 23, 2018) (finding no "special relationship," and thus no duty, where PayPal merely processed transactions); *Bibicheff v. PayPal, Inc.*, No. 2:17-cv-4679 (DRH)(AYS), 2020 WL 2113373, at *5 (E.D.N.Y. May 4, 2020) (no duty absent a special relationship with plaintiff or alleged wrongdoer), *aff'd,* 844 F. App'x 394 (2d Cir. 2021). As these cases recognize, intermediary service providers, like EWS, do not owe a duty to third parties with whom they have no relationship.

*RLFShop* is also instructive. There, the plaintiffs argued they had a "special relationship" with PayPal in connection with fraudulent credit card transactions. 2018 WL 4030544 at *6. The court rejected that argument, concluding that, where PayPal "did not interact directly with Plaintiffs" but merely "processed [the] transaction[s] in which someone else . . . allegedly defrauded Plaintiffs," plaintiffs "do not allege the kind of special relationship that would impose a duty of care on PayPal." *Id.* The same reasoning applies with even greater force here. Indeed,

EWS is even further removed from the challenged transactions because, as the Truist Agreement expressly provides, "Zelle neither transfers nor moves money" and "[a]ll money will be transferred by a Network Financial Institution." Truist Agreement § 8(a)(ii). The Truist Agreement further explains that participating "Network Financial Institutions" are responsible for transferring funds through the service. *Id.* § 8(a). Thus, any transfer of funds related to Zelle transactions was undertaken by participating financial institutions, not EWS. Accordingly, Plaintiffs cannot plausibly allege that EWS had the type of relationship with them necessary to create a legal duty under South Carolina law.

Accordingly, because EWS owed Plaintiffs no cognizable duty under South Carolina law, Plaintiffs cannot establish the threshold element of negligence, and their negligence claim against EWS should be dismissed.

**2. Plaintiffs Fail to Adequately Plead Breach or Causation.**

Even if Plaintiffs could establish a duty (they cannot), their negligence claim independently fails because the FAC does not plausibly allege either breach or causation. To bring a negligence claim under South Carolina law, a plaintiff must establish both causation-in-fact and legal (proximate) cause. *Wickersham v. Ford Motor Co.*, 997 F.3d 526 (4th Cir. 2021). Causation-in-fact requires a showing that the injury would not have occurred but for the defendant's alleged negligence. *M.P. by & through Pinckney v. Meta Platforms, Inc.*, 127 F.4th 516 (4th Cir. 2025). Proximate cause, in turn, requires that the alleged injury be a foreseeable consequence of the defendant's conduct. *Id.* In determining foreseeability, the defendant's conduct must be considered in light of the attendant circumstances. *Id.*

Here, the FAC does not plausibly allege facts showing either that EWS breached any cognizable duty or that any action or omission by EWS caused Plaintiffs' alleged injuries. Instead, Plaintiffs rely on generalized allegations regarding EWS's operation of the Zelle Network and

conclusory assertions that EWS's alleged conduct caused their losses. Dkt. No. 25, ¶¶ 44-46, 85-87.

*First*, the FAC does not plausibly allege any breach by EWS. Plaintiffs allege that EWS "operates the Zelle Network" and "designs, controls, and profits from" the network's transaction infrastructure, including its fraud-detection and dispute-handling protocols. Dkt. No. 25, ¶ 14. Plaintiffs further allege that EWS failed to "implement or maintain adequate fraud-detection, verification, or dispute-resolution protocols on the Zelle Network." Dkt. No. 25, ¶ 86. But the FAC never identifies what specific protocol was deficient, what safeguard EWS should have implemented, how any existing protocol was inadequate, or what conduct by EWS fell below an applicable standard of care. Nor does the FAC allege facts showing that EWS reviewed the transactions at issue, received Plaintiffs' fraud complaints, participated in investigating the disputed transfers, or made any decisions regarding Plaintiffs' accounts. Instead, Plaintiffs offer only conclusory allegations that EWS's fraud-prevention and dispute-resolution measures were inadequate. Such formulaic allegations are insufficient under *Twombly* and *Iqbal*.

*Second*, the FAC fails to plausibly allege that any act or omission by EWS caused Plaintiffs' alleged injury. Plaintiffs assert that EWS's operation of the Zelle Network, including its fraud-detection and dispute-resolution protocols, was a "root cause" of the fraud they suffered and that EWS's alleged failures proximately caused their damages. Dkt. No. 25, ¶¶ 46, 87. But those allegations are entirely conclusory. The FAC does not identify how any specific EWS policy or protocol enabled the unauthorized transfers, how alternative measures purportedly would have prevented them, or why the losses would not have occurred absent EWS's conduct. Instead, the FAC attributes the unauthorized transfers to third-party bad actors who allegedly gained access to Plaintiffs' accounts through multiple attack vectors, including phone hijacking, email hijacking,

and a separate attack involving another financial institution. Dkt. No. 25, ¶ 22. The FAC further alleges that Truist failed to implement Plaintiffs' standing instruction prohibiting Zelle transactions and failed to prevent the unauthorized transfers despite repeated notice. Dkt. No. 25, ¶¶ 18-24, 30-32, 52-54. Plaintiffs therefore plead a chain of events centered on the conduct of third parties and Truist, not EWS. Without factual allegations plausibly connecting a particular act or omission by EWS to the challenged transfers, Plaintiffs have not adequately pleaded either but-for or proximate causation.

Accordingly, even if Plaintiffs could establish a duty of care, the negligence claim independently fails because the FAC does not plausibly allege either breach or causation.

## V. CONCLUSION

As amply demonstrated herein, Plaintiffs' claims against EWS fail as a matter of law. EWS respectfully requests that this Court enter an order dismissing the claims asserted against it with prejudice and granting such other and further relief as the Court deems just and proper.

[SIGNATURE BLOCKS ON THE NEXT PAGE]

Respectfully Submitted,

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY: s/ Jeremy E. Bowers
JEREMY E. BOWERS (Fed. Bar ID No. 11112)
211 King Street, Suite #300 (29401)
Post Office Drawer H
Charleston, SC 29402-0197
PHONE: (843) 577-7700
FACSIMILE: (843) 577-7708
jbowers@barnwell-whaley.com

- AND -

Christopher Fredrich (*pro hac vice* to be submitted)
STEPTOE LLP
2029 Century Park East, Suite 980
Los Angeles, CA 90067
PHONE: 213-439-9400
cfredrich@steptoe.com

Ashley Mullen (*pro hac vice* to be submitted)
STEPTOE LLP
1133 Avenue of the Americas
New York, NY 10036
PHONE: 212-506-3900
amullen@steptoe.com

**ATTORNEYS FOR THE DEFENDANT, EARLY WARNING SERVICES, LLC**

November 12, 2026
Charleston, South Carolina

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Frank M. Haynie and DocWild LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Truist Bank, Truist Financial Corporation, Demetria Scott, and Early Warning Services, LLC,<br><br>Defendants. | ) | Case No.: 3:26-CV-03590-RMG-TER<br><br>**CERTIFICATE OF SERVICE** |

The undersigned certifies that on November 12, 2026, a true and correct copy of the foregoing Memorandum in Support of Motion to Dismiss Plaintiffs' First Amended Complaint filed by the Defendant, Early Warning Services, LLC, was served on the following parties at the address indicated below by US Mail, postage prepaid, and by electronic mail, and on all other parties by ECF notification:

Frank M. Haynie
1469 Florawood Drive
Columbia, SC 29204

DocWild, Inc. f/k/a DocWild's LLC
c/o Registered Agent Frank M. Haynie
1469 Florawood Drive
Columbia, SC 29204
doc@docwild.com

s/ Jeremy E. Bowers
Jeremy E. Bowers (Fed. ID No. 11112)